1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11  RONALD O.,                        )   Case No.  ED CV 19-2007-SP
                                      )
12             Plaintiff,             )
                                      )
13        v.                          )   MEMORANDUM OPINION AND
                                      )   ORDER
14  ANDREW M. SAUL, Commissioner of   )
15  Social Security Administration,   )
                                      )
16             Defendant.             )
                                      )
17  _____)

18

19                          **I.**

20                    <u>**INTRODUCTION**</u>

21        On October 18, 2019, plaintiff Ronald O. filed a complaint against

22  defendant, the Commissioner of the Social Security Administration

23  ("Commissioner"), seeking a review of a denial of supplemental security income

24  ("SSI").  The parties have fully briefed the matters in dispute, and the court deems

25  the matter suitable for adjudication without oral argument.

26        Plaintiff presents two disputed issues for decision: (1) whether the

27  administrative law judge ("ALJ") properly determined he did not meet the 12-

28

                            1

month disability durational requirement; and (2) whether the ALJ properly considered the medical opinions.  Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 4-9; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-9.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ committed harmless error in his durational analysis and properly considered the medical opinions. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 46 years old on January 1, 2014, his alleged disability onset date, and has a GED and certified nursing assistant certification.  AR at 187, 316. Plaintiff has no past relevant work.  *Id*. at 95, 183.

On December 29, 2015, plaintiff filed an application for SSI due to schizophrenia, anxiety, obsessive compulsive disorder, a heart attack, an enlarged liver, and 16 years of incarceration.  *Id*. at 187-88.  The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing.  *Id*. at 217-21, 227-34.

On September 20, 2018, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  *Id*. at 165-86.  The ALJ also heard testimony from Aida Worthington, a vocational expert.  *Id*. at 182-85.  On October 10, 2018, the ALJ denied plaintiff's claim for benefits.  *Id*. at 86-97.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since December 29, 2015, the application date.  *Id*. at 88.

At step two, the ALJ found plaintiff suffered from the severe impairments of

1   hypertension/angina, schizoaffective disorder, and anxiety disorder.  *Id.*

2       At step three, the ALJ found plaintiff's impairments, whether individually or
3   in combination, did not meet or medically equal one of the listed impairments set
4   forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  *Id.* at 89.

5       The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and
6   determined plaintiff had the RFC to perform medium work as defined in 20 C.F.R.
7   § 416.967(c),[2] with the limitations that plaintiff could frequently balance, climb
8   ramps and stairs, stoop, kneel, crouch, and crawl.  *Id*. at 91.  The ALJ precluded
9   plaintiff from: climbing ladders, ropes, and scaffolds; exposure to unprotected
10  heights, hazards, or moving machinery parts; public contact; and work in a
11  workplace where a television would be in use.  *Id*.  The ALJ also determined
12  plaintiff could:  perform simple routine tasks, but not at a production rate pace as
13  with an assembly line; tolerate occasional changes in the workplace environment;
14  make simple work related decisions; and have frequent contact with co-workers
15  and supervisors.  *Id*.

16      The ALJ found, at step four, that plaintiff had no past relevant work.  *Id*. at
17  95.

18      At step five, the ALJ found that given plaintiff's age, education, work
19  experience, and RFC, there were jobs that existed in significant numbers in the
20  national economy that plaintiff could perform, including marker, day worker, and

21

22

23      [1]   Residual functional capacity is what a claimant can do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
24   56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,
     the ALJ must proceed to an intermediate step in which the ALJ assesses the
25   claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151
     n.2 (9th Cir. 2007).
26

27      [2]   All citations to the Code of Federal Regulations refer to regulations
28   applicable to claims filed before March 27, 2017.

1  linen room attendant. *Id*. at 95-96. Consequently, the ALJ concluded plaintiff did

2  not suffer from a disability as defined by the Social Security Act. *Id.* at 96.

3       Plaintiff filed a timely request for review of the ALJ's decision, which the

4  Appeals Council denied. *Id.* at 1-4. The ALJ's decision stands as the final

5  decision of the Commissioner.

6  **III.**

7  **<u>STANDARD OF REVIEW</u>**

8       This court is empowered to review decisions by the Commissioner to deny

9  benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

10  Administration must be upheld if they are free of legal error and supported by

11  substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

12  (as amended). But if the court determines the ALJ's findings are based on legal

13  error or are not supported by substantial evidence in the record, the court may

14  reject the findings and set aside the decision to deny benefits. *Aukland v.*

15  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

16  1144, 1147 (9th Cir. 2001).

17       "Substantial evidence is more than a mere scintilla, but less than a

18  preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

19  "relevant evidence which a reasonable person might accept as adequate to support

20  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

21  F.3d at 459. To determine whether substantial evidence supports the ALJ's

22  finding, the reviewing court must review the administrative record as a whole,

23  "weighing both the evidence that supports and the evidence that detracts from the

24  ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

25  affirmed simply by isolating a specific quantum of supporting evidence.'"

26  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

27  Cir. 1998)). If the evidence can reasonably support either affirming or reversing

28

4

1  the ALJ's decision, the reviewing court "'may not substitute its judgment for that
2  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
3  1992)).

4                                             **IV.**

5                                    **DISCUSSION**

6  **A.    The ALJ Committed Harmless Error in His Durational Analysis**

7          Plaintiff argues the ALJ erred when he failed to consider evidence of
8  plaintiff's disability prior to the application date in reaching the determination that
9  his symptoms did not last for 12 continuous months.  P. Mem. at 4-6.  Specifically,
10 plaintiff contends the disability onset date is January 1, 2014,[3] and the ALJ should
11 have examined the duration of the symptoms from that date rather than the
12 application date.  *Id.*

13         In order for a claimant to be considered disabled, the severe impairment
14 must have lasted or be expected to last for a continuous period of at least 12
15 months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.909.  Unlike disability
16 insurance benefits, the Social Security Act precludes SSI payments prior to the
17 application date and therefore, generally, the onset date and application date are the
18 same.  *See* 42 U.S.C. § 1382(c)(7); 20 C.F.R. §§ 416.335, 416.501; Social Security
19 Ruling ("SSR") 83-20 ("Onset will be established as of the date of filing provided
20 the individual was disabled on that date.").  Nevertheless, logic dictates that an
21 impairment appears before a claimant files an application for benefits.  As such,
22 Social Security's internal policy manual, the Program Operations Manuel System

23 ─────────────────────

24 [3]    In his memorandum, plaintiff contends the Commissioner, in the initial
   disability determination, "recorded and assessed" the alleged onset of disability
25 date as October 1, 2014.  P. Mem. at 6.  This appears to be a typographical error
   since the initial disability determination reflects an alleged onset of disability date
26 of January 1, 2014.  *See* AR at 187-88.  Contrary to plaintiff's contention, this
27 recording is not of any significance.  This date was simply a recording of the
28 disability onset date plaintiff alleged.

                                              5

("POMS"), recognizes an ALJ may need to consider medical evidence prior to the application date in order to determine the severity or duration of a claimant's impairments.  POMS DI 25501.370 ("we do consider the period before the filing date under certain circumstances, for example when determining if a claimant met the 12-month duration requirement").

Here, the ALJ determined that plaintiff's symptoms were controlled within one year of the application date and any limitations in the broad areas of functioning were only moderate.  *See* AR at 89-90, 92.  Plaintiff argues that the duration of a disability may begin prior to the application date and the ALJ's finding that the symptoms were controlled within one year of the application date suggests the ALJ failed to consider the period prior to that date.  The court agrees the ALJ erred by measuring the duration of plaintiff's symptoms from the application date.  But this error was harmless.

It is plaintiff's burden to prove the onset date of disability.  *See Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991) (discussing an application for disability insurance benefits).  Although plaintiff alleges he has been disabled since January 1, 2014, he has not produced any evidence, medical or otherwise, to support this onset date.  December 2014 hospital records for chest pain treatment indicate plaintiff was alert, oriented, exhibited normal mood and affect, and cooperative, thereby suggesting plaintiff did not have disabling mental symptoms at that time.  *See* AR at 406, 424, 444.  The earliest mental health record in the administrative record is a November 13, 2015 treatment note.  *See id*. at 481-82.  From a logical perspective, plaintiff's symptoms arose prior to November 13, 2015 since he would not have sought treatment unless he was already experiencing symptoms.  But plaintiff has not presented any medical evidence of when his symptoms began or their severity when they began.  Plaintiff points to Dr. Rashin D'Angelo's statement in a March 31, 2016 psychiatric evaluation that plaintiff "has

1   a long history of mental illness with fixed delusional system," but nothing in the

2   record supports such a long history, and it appears Dr. D'Angelo made this

3   statement based solely on plaintiff's own report that he has experienced

4   "delusional thinking and distorted reality since 1995." *See* AR 507-08.  As such,

5   there is no basis in the record to conduct a durational analysis beginning earlier

6   than November 13, 2015.

7         Substantial evidence supports the ALJ's determination that plaintiff's

8   symptoms did not last for a continuous period of 12 months.  Plaintiff began to

9   receive antipsychotic medication on November 13, 2015.  *See id.*  Although

10  plaintiff continued to hear voices from the television in December 10, 2015, he

11  reported that he was stable on the medication and the clinic did not indicate any

12  abnormal objective findings.  *See id*. at 475-76.  In February 13, 2016, plaintiff

13  continued to report hearing voices from the television but stated he was "doing

14  very well."  *See id*. at 468-70.  Plaintiff's treating physician, Dr. Salvador Arella,

15  observed only normal objective findings during the mental status examination.  *See*

16  *id*.  On March 31, 2016, consultative examiner Dr. D'Angelo observed plaintiff

17  had, among other things, monotonous speech, slightly depressed mood, flat and

18  blunted affect, and mild difficulties interacting with him and focusing, but noted

19  plaintiff's symptoms were subsiding with medication.  *See id*. at 506-07.  Indeed,

20  throughout 2016-2018, other than a few complaints of anxiety an paranoia,

21  plaintiff consistently reported that he was doing well, including "100% better," and

22  the medications were effective, and Dr. Arella did not observe any abnormal

23  objective findings.[4]  *See, e.g., id*. at 105-64; 527-64.

24        Accordingly, the ALJ erred when he used the application date as the onset

25  date, but the error was harmless.  Substantial evidence supported the ALJ's

26

27       [4]   Plaintiff submitted additional treatment notes to the Appeals Council in

28  support of his request for review.  *See* AR at 2, 102-64.

1  determination that plaintiff's symptoms did not last a continuous 12 months.

2  **B.    The ALJ Properly Considered the Medical Opinions**

3        Plaintiff contends the ALJ failed to properly consider the opinions of Dr.

4  Salvador Arella, a treating physician, and Dr. Rashin D'Angelo, a consultative

5  examiner.  P. Mem. at 6-9.  Specifically, plaintiff argues the ALJ rejected Dr.

6  Arella's and Dr. D'Angelo's opinions without provide specific and legitimate

7  reasons.  *Id*. at 6.

8        In determining whether a claimant has a medically determinable impairment,

9  among the evidence the ALJ considers is medical evidence.  20 C.F.R. §

10  416.927(b).  In evaluating medical opinions, the regulations distinguish among

11  three types of physicians:  (1) treating physicians; (2) examining physicians; and

12  (3) non-examining physicians.[5]  20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81

13  F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's

14  opinion carries more weight than an examining physician's, and an examining

15  physician's opinion carries more weight than a reviewing physician's."  *Holohan v.*

16  *Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2).

17  The opinion of the treating physician is generally given the greatest weight because

18  the treating physician is employed to cure and has a greater opportunity to

19  understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

20  1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

21        "[T]he ALJ may only reject a treating or examining physician's

22  uncontradicted medical opinion based on 'clear and convincing reasons.'"

23  *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (*citing Lester*, 81 F.3d

24  at 830-31).  "Where such an opinion is contradicted, however, it may be rejected

25

26  _____

27        [5]  Psychologists are considered acceptable medical sources whose opinions are
accorded the same weight as physicians.  20 C.F.R. § 416.913(a)(2).  Accordingly,

28  for ease of reference, the court will refer to all psychologists as physicians.

1  for 'specific and legitimate reasons that are supported by substantial evidence in

2  the record.'"  *Id.* (quoting *Lester*, 81 F.3d at 830-31).  The opinion of a non-

3  examining physician, standing alone, cannot constitute substantial evidence.

4  *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Lester*, 81 F.3d at 831.

5  **1.  Dr. Salvador Arella**

6  Dr. Salvador Arella, a psychiatrist, treated plaintiff from November 13, 2015

7  through July 2017.[6]  *See id.* at 147-48, 481-82.  At the initial office visit, plaintiff

8  reported that the television talks to him, he had a bad temper, and he had been in

9  prison for most of his life.  *Id.* at 481.  During the mental status examination, Dr.

10  Arella observed no abnormalities and noted plaintiff's orientation, memory,

11  judgment, concentration, attention, and insight were intact.[7]  *Id.* at 481-82.  Dr.

12  Arella diagnosed plaintiff with schizoaffective disorder and opted to treat him with

13  Invegna.  *Id.* at 482.  At other visits in November 2015, plaintiff reported anxiety,

14  sadness, anhedonia, and insomnia, but Dr. Arella did not indicate any abnormal

15  objective findings.  *See id.* at 477-80.  By December 10, 2015, plaintiff reported he

16  was stable on the medications.  *Id.* at 475.  Although plaintiff continued to hear

17  voices occasionally, plaintiff reported he was doing well on medications from

18  February 2016 through July 2017, and Dr. Arella did not note any abnormal

19  findings.  *See, e.g., id.* at 147-48, 468-69, 527-28, 532-33, 564-65.  In an opinion

20  dated December 30, 2016, Dr. Arella opined plaintiff was unable to meet

21  

22      [6]  Although plaintiff continued to be treated at the same clinic employing Dr.

23  Arella, the treatment records indicate that starting in August 2017, a nurse
practitioner took over plaintiff's treatment.  *See* AR at 105-46.

24  

25      [7]  The record contains undated handwritten treatment notes that appear to be
from November 13, 2015 or near that date given the subjective reports are

26  substantially the same as those in the November 13, 2015 electronic notes.

27  *Compare* AR at 481-82 and 487-91.  However, in contrast to the electronic notes,
the handwritten notes contain objective findings that plaintiff was depressed,

28  guarded, and paranoid, and had a despairing and anxious mood.  *Id.* at 490.

competitive standards in every functional area due to his inability to cope and poor concentration. *Id*. at 554-55.

### 2. **Dr. Rashin D'Angelo**

Dr. Rashin D'Angelo, a psychologist, examined plaintiff on March 31, 2016 and reviewed two treatment notes. *Id*. at 504-08. Plaintiff reported to Dr. D'Angelo he suffered from psychiatric symptoms since 1995, including, among other things, talking to his television, difficulty managing his anger, paranoia, and difficulty with concentration and short term memory. *See id*. at 504-05. Dr. D'Angelo observed plaintiff, among other things, spoke in a monotonous tone, had a slightly depressed mood, had a flat and blunted affect, was able to do serial threes, and had common sense understandings. *See id*. at 506-07. Dr. D'Angelo diagnosed plaintiff with schizoaffective disorder, unspecified, and noted plaintiff's symptoms were improving and would continue to improve with medication. *See id*. at 507-08. Based on plaintiff's subjective complaints, the mental status examination, and treatment notes, Dr. D'Angelo opined plaintiff had mild difficulties: maintaining composure and even temperament; focusing or maintaining attention; and in concentration, persistence, or pace. *Id*. Dr. D'Angelo opined plaintiff would have moderate difficulties or limitations: in maintaining social functioning; performing simple or repetitive tasks; performing work activities on a consistent basis without special or additional supervision; completing a normal workday or work week; accepting instructions from supervisors; interacting with coworkers and the general public; and handling the usual stresses, changes, and demands of gainful employment. *Id*. at 508. Dr. D'Angelo further opined plaintiff would have marked limitations performing detailed and complex tasks. *Id*. Finally, Dr. D'Angelo opined plaintiff's prognosis was poor due to the chronicity of his symptoms. *Id*.

1

       **3.**      <u>**State Agency Physicians**</u>

2

       State agency physicians reviewed plaintiff's mental health medical records

3

and Dr. D'Angelo's opinion. *See id*. 191-92, 207. On May 19 and October 12,

4

2016, the state agency physicians opined plaintiff had moderate limitations in his

5

ability to: understand, remember, and carry out detailed instructions; complete a

6

normal workday and workweek without interruptions from psychologically based

7

symptoms; perform at a consistent pace; interact with the general public; accept

8

instructions and respond appropriately to criticism from supervisors; get along with

9

coworkers; respond appropriately to changes in the work setting; and set realistic

10

goals or make plans independently of others. *See id*. at 196-98, 211-12. The state

11

agency physicians opined plaintiff was capable of understanding, remembering,

12

and carrying out simple instructions; making simple work-related decisions;

13

maintaining a simple schedule; and completing simple tasks on a consistent basis.

14

*See id*. at 196-97, 211.

15

       **4.**      <u>**The ALJ's Findings**</u>

16

       The ALJ determined plaintiff had the mental RFC to: perform simple

17

routine tasks, but not at a production rate pace as with an assembly line; tolerate

18

occasional changes in the work environment; make simple work related decisions;

19

and have frequent contact with co-workers and supervisors. *Id*. at 91. The ALJ

20

precluded plaintiff from public contact and work in a workplace where a television

21

would be in use. *Id*. In reaching this determination, the ALJ gave partial weight to

22

Dr. D'Angelo's opinion, specifically rejecting the marked mental limitation, and

23

less weight to Dr. Arella's and the state agency physicians' opinions. *See id*. at 94-

24

95.

25

       The ALJ's reasons for discounting Dr. Arella's and Dr. D'Angelo's opinions

26

were specific and legitimate, and supported by substantial evidence. The ALJ gave

27

less weight to Dr. Arella's opinion because it was inconsistent with the treatment

28

records and plaintiff's testimony.  *See id*. at 95.  Inconsistency with medical evidence is a specific and legitimate reason to discount a physician's testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician"); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). Here, plaintiff's treatment notes reflect plaintiff experienced improvement within a month of starting antipsychotic medication, he was "doing well" by as early as March 2016, he stated he was "100% better" in December 2016, and his symptoms continued to be controlled through 2018.  *See, e.g.*, AR at 129-30, 145-48, 468-69, 475-76, 532-33, 535-36, 547-48, 564-65.  Dr. Arella also did not observe any abnormal objective findings, and instead regularly noted plaintiff was alert and oriented, had intact cognition, had clear speech, and had no hallucinations or paranoia.  *See, e.g., id*. at 528, 535, 545, 548, 568.  Similarly, Dr. Arella's opinion was also inconsistent with plaintiff's testimony.  *See Rushing v. Astrue*, 360 Fed. Appx. 781, 782 (9th Cir. 2009) (upholding ALJ's rejection of medical opinions because they were inconsistent with claimant's testimony); *Clark v. Astrue*, 321 Fed. Appx. 570, 572 (9th Cir. 2009) (inconsistency with a claimant's testimony was a specific and legitimate reason to discount a physician's opinion).  Although plaintiff testified he had anxiety around strangers and heard voices from the television, he testified his symptoms improved with medication.  *See* AR at 170-73.

With regard to Dr. D'Angelo, the ALJ only rejected a limited portion of his opinion – that plaintiff had marked limitations performing detailed and complex tasks – on the basis that even if plaintiff had marked limitations in March 2016, he improved after continuous treatment.  *See id*. at 94-95, 508.  Plaintiff's treatment

1  records reflect Dr. D'Angelo issued his opinion relatively early in plaintiff's

2  treatment and, as discussed above, his symptoms improved with medication.

3  Moreover, although the ALJ expressly rejected this portion of Dr. D'Angelo's

4  opinion, he limited plaintiff to simple, routine work.  Thus, even if the ALJ erred in

5  rejecting this opined limitation, the error would have been harmless.

6       Accordingly, the ALJ properly discounted Dr. Arella's opinion, and properly

7  discounted Dr. D'Angelo's opinion concerning plaintiff's ability to perform

8  detailed and complex tasks.

9  **V.**

10  **CONCLUSION**

11       IT IS THEREFORE ORDERED that Judgment shall be entered

12  AFFIRMING the decision of the Commissioner denying benefits, and dismissing

13  the complaint with prejudice.

14

15  DATED: March 31, 2021

16

17                                        SHERI PYM

18                                        United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28